UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  No.1:13-cr-37-HSM-WBC |
| | ) |
| CELVIN HOUSTON | ) |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Celvin Houston's three Motions to Suppress (Docs. 41, 42 and 46) and three Supplemental Motions to Suppress (Docs. 64, 65, and 66) are before the undersigned Magistrate Judge having been referred by the District Court for a report and recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). Defendant is charged with being a felon in possession of a firearm and ammunition. He seeks to suppress statements he made to law enforcement at the police station on the day of his arrest (Docs. 41 and 64); he seeks to suppress any information obtained from his cell phone (Doc. 42 and 65); and he seeks to suppress the recordings of phone calls he made from the Hamilton County Jail (the Jail) the day after his arrest. (Docs. 46 and 66). For the reasons stated herein, it is RECOMMENDED that the Defendant's motion to suppress his statements [Doc. 41 and 64] be DENIED as moot, his motion to suppress the contents of his cell phone [Doc. 42 and 65 ] be DENIED, and his motion to suppress the recordings of his phone calls placed from the intake/booking areas of the Jail [Doc. 46 and 66] be GRANTED.

II. Relevant Facts

Two evidentiary hearings were held before the undersigned Magistrate Judge on Defendant's motions to suppress: the first on July 30, 2014 and the second on December 19,

1

2014.

*A. The July 30, 2014 Evidentiary Hearing*

Investigator Lucas Fuller of the Chattanooga Police Department's (CPD) major crimes division, Special Agent Gray Lane of the Bureau of Alcohol,Tobacco, Firearms and Explosives (ATF), and Officer Bill Bolden of the Hamilton County Sheriff's Office, assigned to the security section of the Jail, were called to testify.

Lucas Fuller testified that he was monitoring police radio reports of a shooting of a police officer at the East Lake Courts public housing development on March 12, 2013. When he arrived at the scene, investigators had already marked off the crime scene. Officer McMillan had been shot, and there were multiple shell casings at the scene that did not belong to the officer's firearm. Items of personal property, including a phone belonging to the injured officer, were also on the scene. A single die and a lighter were found in proximity to the location of the gun battle. Police also found a cell phone with a blue tooth earpiece in a grassy area in the public housing project's courtyard. All of these items were in plain view in the common area of the housing authority property, which was not enclosed by any fences.

Investigators were conducting their initial investigation of the crime scene, which included assisting in the documentation of the registration of several vehicles that were parked in the area. The vehicles were next to the grassy area where the cellphone lay face-up. During the investigation the phone continued to ring. Investigator Fuller looked at the phone as it rang and could see the phone number of the person calling. Fuller then used his own cell phone to call the number that had been displayed on the abandoned phone. He asked the caller, who identified herself as Pam, whom she was attempting to contact. Pam told him that she was attempting to call "Squeaky." Further investigation led police to identify Celvin Houston (Defendant) as

2

"Squeaky." On the basis of that identification, Mr. Houston was arrested on March 13, 2013, taken to the police station, and charged with being a felon in unlawful possession of a firearm and ammunition.

Special Agent Gray Lane of ATF testified he was the case agent on the felon in possession charge. After Defendant's arrest, Agent Lane and Detective Justin Kilgore attempted to conduct an interview. Houston had been arrested the previous night while inebriated, and, at 6:00 am, he lay down at the police station and slept. At 11:51 am that same day, Kilgore and Lane attempted to interview Defendant again. According to Agent Lane, Defendant said he had "slept it off," agreed to be interviewed, and signed a *Miranda* form waiving his Fifth Amendment rights at 11:51 am. Lane further testified that when Defendant asked for a lawyer during the interview, the interview was discontinued. Defendant disputes that he was competent to waive his Fifth Amendment rights or that the interview ended when he asked for a lawyer. It is unnecessary, however, for the undersigned to resolve these disputes since the government has stated it will not use this statement against Defendant at trial.

Following the interview, Defendant was transported to the Jail where he made three phone calls from the intake and book areas of the Jail. These calls were recorded by the Jail without his knowledge. The government has since provided Defendant's counsel with copies of these three recorded phone calls.

Agent Lane also testified about the telephone system at the Hamilton County Jail as follows: the Jail has a system where both the inmates making calls and the recipients hear a preamble which advises the call may be recorded or monitored. The government played a sample recording of this preamble at the hearing. The sample preamble warned the caller and recipient of the call that the call may be monitored. The computer generated voice in the sample

3

preamble ended with the words, "thank you." Lane testified that the entire preamble was not included in the copies of the three calls given to defense counsel; rather, each of the three recordings provided begins with only the last two words of the preamble, "thank you," indicating that the warnings that calls may be recorded were given before each call.

Hamilton County Sheriff's Officer Bill Bolden, who was assigned to the security section in the Hamilton County Jail, also testified that in March of 2013 the phone system did indeed provide the warning from calls placed in the intake/booking areas that calls may be recorded or monitored.

*2. The December 19, 2014 Evidentiary Hearing*

A second hearing on the Defendant's motion to suppress was held on December 19, 2014 in which Deputy Sheriff Eric Qualls with the Hamilton County Sheriff's Department testified as follows: Qualls is a security intelligence officer at the Jail where Defendant was brought for intake and booking on March 13, 2013. Qualls testified that he is the person employed at the Jail who has the most knowledge on the subject of the phone system at the Jail. Qualls testified that on March 13, 2013, the Jail used Global Tel Link company to provide telephone service to the inmate population. When a suspect is brought into the Jail, he is first taken to the intake area and then the booking area. In both the intake and booking areas, he can pick up the phone to make a collect call. Under the Global Tel Link system, a call placed from the intake/booking areas on March 13, 2013 would not have had a preamble to the call warning the caller or the recipient of the call that the call may be recorded. In addition, there were no signs or other forms of notice in the intake/booking areas that a phone call may be monitored. The "thank you" heard at the beginning of the recorded phone calls made by Defendant in the intake/booking areas is the end of a separate preamble informing the recipient of the phone call that he is receiving a collect call

4

from someone at the Jail. The originals of the phone calls at issue are no longer available because the Jail has implemented a new telephone system. This new telephone system includes a warning for all calls placed from the Jail, including the intake/bookings areas, that calls may be monitored or recorded.

The undersigned finds Deputy Qualls' testimony to be credible, and I conclude that when Defendant made his phone calls from the intake/booking areas on March 13, 2013, there were no warnings whatsoever that his calls may be monitored or recorded. Further, the government concedes there was no notice of any form given that Defendant's phone calls made from the intake/booking areas may be monitored or recorded.

### III. Analysis

1. *Motion to Suppress Statement (Docs. 41and 64)*

Defendant moves to suppress statements given to interrogating law enforcement officers on March 13, 2013, on the ground that he did not voluntarily and knowingly waive his Fifth Amendment rights against self-incrimination because he was inebriated when *Mirandized* and then told police he did not want to talk with them. The government in response states it does not intend to introduce any statements from this interview. Accordingly, it is RECOMMENDED that Defendant's motion to suppress these statements be denied as moot.

2. *Motion to Suppress Information from the Cell Phone (Docs. 42 and 65)*

Defendant seeks to suppress all information received from the search of his cell phone on the basis that a warrantless search of the phone violated his Fourth Amendment rights.

When a party raises an argument that his Fourth Amendment rights have been violated by an unreasonable search or seizure, that party bears the burden to first prove he has a legitimate expectation of privacy in the thing or place searched. *Rakas v. Illinois*, 439 U.S. 128 (1978);

5

*United States v. Mastromatteo*, 538 F.3d 535, 544 (6th 6 Cir. 2008). It is well settled that when a person discards property, he has abandoned it and no longer possesses a reasonable expectation of privacy in that property. *See California v. Hodari D.,* 499 U.S. 621, 628-29 (1991) (holding that when defendant threw onto the ground a rock of crack cocaine during a foot chase with police immediately before he was tackled, he abandoned the rock of crack cocaine and his motion to suppress was properly denied) (citing *Hester v. United States*, 265 U.S. 57 (1924) (holding no seizure within the Fourth Amendment occurred when revenue agents picked up and examined containers dropped by moonshiners during a pursuit by revenuers because the moonshiners abandoned the containers when they dropped them.)) *See also United States v. Cruthers*, 458 F.3d 459, 463 n. 1 (6th Cir. 2006) (defendant abandoned his firearm when he discarded it in an alley while being pursued by police); *United States v. Martin*, 399 F.3d 750, 752-53 (6th Cir. 2005) (holding defendant abandoned revolver when he dropped it while being chased by police and motion to suppress was properly denied).

In this case, Defendant's cell phone was discovered in the grass at the scene of the shooting near several other items. The government argued, and it does appear to the undersigned from the circumstantial evidence, that Defendant discarded his phone on the ground. Further, Defendant presented no evidence to the contrary that he discarded his phone. The undersigned concludes Defendant abandoned the phone and any legitimate expectation of privacy in the information contained therein. *Id.* Consequently, it is RECOMMENDED Defendant's motion to suppress the contents of the phone be denied.

      3. *Recorded Phone Calls from the Jail (Doc. 46 and 66)*

Defendant asserts that the recordings of his phone calls made from the intake/booking areas of the Jail should be suppressed as evidence against him at trial on two separate and

independent grounds: first, his phone calls from the intake/booking areas of the Jail were intercepted in violation of his Fourth Amendment right to be free of unreasonable searches and seizures. Second, Defendant asserts that the recording of these conversations constituted a wiretap in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III).[1]

The government counters that Defendant did not have a legitimate expectation of privacy in the phone conversations he held from the booking/intake areas of the Jail and thus no Fourth Amendment violation occurred. The government further contends the exception found in Title III known as the "law enforcement exception" applies to take said phone calls outside the purview of Title III. The undersigned will examine both asserted bases for suppression in turn.

*A. The Fourth Amendment*

"'It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched.'" *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th 6 Cir. 2008) (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir.2001)). Absent a legitimate expectation of privacy in the premises searched, the Fourth Amendment offers no protections to the defendant against police intrusions into the premises searched. *See United States v. Hunyady*, 409 F.3d 297, 300 (6th Cir. 2005) (the "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.") (quoting *Rakas v. Illinois* , 439 U.S. 128, 143 (1978)). When considering whether a defendant has met his burden

---

[1] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522, is also known as the Electronic Communications Privacy Act. *Adams v. City of Battle Creek*, 250 F.3d 980, 986 (6th Cir. 2001).

to establish that he had a legitimate expectation of privacy in the place searched, a court must conduct a two part analysis. First, the court must ask "whether the individual, by his conduct, has exhibited an actual expectation of privacy; that is, whether he has shown that he sought to preserve something as private." *Bond v. United States*, 529 U.S. 334, 338 (2000) (internal citation omitted); *United States v. Fitzgerald*, 499 F.3d 596, 601 (6th Cir. 2007) ("In order to be afforded protection under the Fourth Amendment, a person must exhibit a subjective expectation of privacy...."); *accord, United States v. Waller*, 426 F.3d 838, 844 (6th Cir. 2005); *United States v. King*, 227 F.3d 732, 743 (6th Cir. 2000). Second, the court must "inquire whether the individual's expectation of privacy is one that a society is prepared to recognize as reasonable." *Bond v. United States*, 529 U.S. at 338 (internal citation omitted); *accord, Waller*, 426 F.3d at 844; *King*, 227 F.3d at 743. This analysis focuses on the second prong: whether defendant had a reasonable expectation of privacy in his phone calls from the intake/booking areas of the Jail.

Both parties cite to *United States v. Paul,* 614 F.2d 115 (6th Cir. 1980) as supporting their respective positions. The *Paul* court addressed the Fourth Amendment issue *in toto* as follows:

> The sole question raised on appeal is whether the district court erred in refusing to suppress testimony regarding the monitored telephone conversations. Defendants contend that the government monitoring violated Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510 et seq. The issue before us is whether Title III applies to the monitoring of telephone calls to or from inmates at a prison and, if so, whether Title III was violated.
>
> We note that defendants' claim is purely statutory. It still appears to be good law that so far as the Fourth Amendment is concerned, jail officials are free to intercept conversations between a prisoner and a visitor. This was the ruling in *Lanza v. New York*, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962) and it appears to have survived *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *See United States v. Hearst*, 563 F.2d 1331, 1344-46 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

*Id.* at 116. Thus, it appears to the undersigned that the *Paul* Court's discussion of the Fourth Amendment was dicta since the sole basis for the appeal in that case was Title III. Nevertheless,

8

this discussion is instructive, and the Defendant concedes that *Paul* states an incarcerated prisoner does not have a reasonable expectation of privacy in his phone calls made in prison. However, Defendant asserts his case can be differentiated from that in *Paul* on the ground that, unlike Paul, he was not a convicted prisoner being housed in the jail at the time he made his phone call; rather, he was a pretrial detainee being held in the booking/intake areas where "anyone" "could use those phones for free without being a prisoner." (Defendant's Reply brief at 5, Doc. 88, Page ID # 338). Consequently, continues the argument, Defendant retained his reasonable expectation of privacy in the phone calls at issue. Defendant further asserts "[t]his expectation is bolstered by the fact that Hamilton County Sheriff's Office provided neither a written warning nor a recorded warning that the calls made in those areas were being recorded." *Id.*, Page ID # 338. Defendant further contends that "the cases upon which the Government erroneously lies involve situations in which specific warnings or notice was administered to the inmate before a call was placed." *Id.*, Page ID # 338.

In *Paul,* the telephone rules were posted at the phones inside the prison notifying the inmates that their phone calls may be monitored. Thus, the court concluded the prisoners had "reasonable notice that monitoring of their telephone conversations might occur." *Paul*, 614 F.2d at 116. However, this discussion of notice that telephone calls may be monitored related only to the *Paul* court's discussion of the application of Title III, not to its discussion of the Fourth Amendment. On the matter of Fourth Amendment protection, the *Paul* court simply stated there was no reasonable expectation of privacy in prison phone calls – whether there was notice of monitoring was not a factor influencing this conclusion. *Id.* at 116. The *Paul* Court relied on *Lanza v. New York*, 370 U.S. 139 (1962) in reaching this conclusion. In *Lanza*, prison officials surreptitiously recorded a conversation between a visitor and a prisoner which occurred

9

in the prison's visitation room. The Court stated "the visitor's room of a public jail" is not protected by the Fourth Amendment:

> … to say that a public jail is the equivalent of a man's 'house' or that it is a place where he can claim constitutional immunity from search or seizure of his person, his papers, or his effects, is at best a novel argument. … A business office is a protected area, and so may be a store. A hotel room, in the eyes of the Fourth Amendment, may become a person's 'house,' and so, of course, may an apartment. An automobile may not be unreasonably searched. Neither may an occupied taxicab. Yet, without attempting either to define or to predict the ultimate scope of Fourth Amendment protection, it is obvious that a jail shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room. In prison, official surveillance has traditionally been the order of the day. Though it may be assumed that even in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection, there is no claimed violation of any such special relationship here.

*Id*. at 143. (Internal footnotes omitted).[2] However, *Lanza* was ultimately decided on a point of state law, 370 U.S. at 145-147, and thus the discussion regarding the Fourth Amendment constitutes dicta. *See Hudson v. Palmer*, 468 U.S. 517, 524 n.6 (1984) (*Lanza* Court's discussion of privacy rights in a prison "was plainly dictum.")

The Ninth Circuit's decision in *United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996), a case cited by both the government and the Defendant in this case as supporting their respective positions, is also instructive. In *Van Poyck*, the defendant was a pretrial detainee at the time his phone calls were intercepted in jail – though it is not clear from what portion of the jail the defendant made his phone calls. The jail had a policy to routinely monitor all inmate phone calls and did so. Further, every inmate was informed in writing at the time of booking that their calls would be monitored, and there were signs posted above the phones warning that calls are recorded. In discussing the defendants' Fourth Amendment rights, the *Van Poyck* Court first

---

[2] In *Katz v. United States*, 389 U.S. 347, 352 (1967), the Supreme Court clarified that the Fourth Amendment protects people, not places.

concluded that the defendant could have had no subjective expectation of privacy because he had notice that the calls were being recorded. *Id.* at 290-91 ("if he knew [the jail] was listening, it is hard to believe he thought his calls were private.") The court then stated that even if the defendant did have a subjective expectation of privacy, he could not have had a *reasonable* expectation of privacy. *Id.* at 290-91. However, the court's analysis of this part of its holding did not rely in any way on notice to the defendant:

> Even if Van Poyck believed that his calls were private, no prisoner should reasonably expect privacy in his outbound telephone calls. Although prisoners do not forfeit all their privacy rights at the jailhouse steps, *Franklin v. Oregon*, 662 F.2d 1337, 1347 (9th Cir.1981) ( "[A] prisoner does not lose all rights to privacy."), they do have those rights severely curtailed. … *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (finding that a prisoner had no reasonable expectation of privacy in his prison cell); *Lanza v. New York*, 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962) (finding that prisoner had no reasonable expectation of privacy in public jail visiting rooms); *United States v. Hitchcock*, 467 F.2d 1107 (9th Cir.1972), *cert. denied*, 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973) (finding that prisoner had no reasonable expectation of privacy in his cell).

*Id.* (internal footnote omitted). The *Van Poyck* court conclusively stated, "[w]e hold that any expectation of privacy in outbound calls from prison is not objectively reasonable and that the Fourth Amendment is therefore not triggered by the routine taping of such calls." *Id.* at 291.[3] The *Van Poyck* court also found it of no import that the defendant was a pretrial detainee instead of a convicted inmate: "[t]he extent of curtailment for pretrial detainees is the same as for convicted inmates." (*Id.* at 291 n. 10) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). As a *separate and alternative basis* for denying defendant's Fourth Amendment claim, the *Van Poyck* court also held that by using the phone after he had been given ample notice that his calls could

---

[3] The *Van Poyck* Court also stated, "This analysis does not apply to 'properly placed' telephone calls between a defendant and his attorney…." *Id.* at 291 n. 9. The undersigned agrees. *See also Gennusa v. Canova*, 748 F.3d 1103 (11th Cir. 2014) (defendant had reasonable expectation of privacy in his and his attorney's conversations in interview room at Sheriff's office and thus surreptitious recording violated the Fourth Amendment.)

11

be recorded, the defendant consented to their being recorded and his consent "vitiates a Fourth Amendment claim." *Id.* at 291. ("Because consent vitiates a Fourth Amendment claim, Van Poyck's Fourth Amendment claim independently fails on this ground.") Thus, consent was not a factor in the *Van Poyck* court's conclusion that the defendant did not have a reasonable expectation of privacy in his phone calls for Fourth Amendment purposes. *See also*, *United States v. Magee,* 2014 WL 5325814 *11 (D. Me. Oct. 20, 2014) (a pretrial detainee has no reasonable expectation of privacy in his phone calls placed from a detention center for purposes of the Fourth Amendment, and, in the alternative, even if he did, notice of the monitoring would constitute consent to it); *United States v. Akinola*, 2013 WL 1103702 *14 (D.N.J. Mar. 15, 2013) ("society does not recognize as reasonable any expectation of privacy in phone calls made from a prison," regardless of whether notice was given.)

Defendant's position is not without support, however. For example, in *United States v. Friedman*, 300 F.3d 111, 123 (2d Cir. 2002), the court found that "[t]he notice that [defendant] received is also sufficient to dispose of the [defendant's] Fourth Amendment claims related to the tapes, as he had no reasonable expectation of privacy under the circumstances." In *Friedman,* a sign was posted above the phones in the booking area indicating that calls to attorneys would not be recorded. There was no explicit warning that calls to non-attorneys placed anywhere else in the jail, including from pay phones located in the inmate's cells, may be recorded. However, the *Friedman* court concluded a reasonable person would understand, based on the statement that calls to *attorneys* would not be recorded, that calls to *non-attorneys* might be recorded and therefore sufficient notice had been given. *Id.* at 122-23. Thus, while the notice was minimal at best, it was still an important factor in concluding no reasonable right of privacy for purposes of the Fourth Amendment existed.

12

In *United States v. Houston*, 2013 WL 5595405 (E.D. Tenn. Oct. 10, 2013), the court also considered a prisoner's Fourth Amendment claim relating to his phone calls recorded in the county jail. In *Houston*, a recording preceded every call placed from the jail indicating that the call was being monitored. Defendant sought to suppress an incriminating phone call on the ground it was recorded in violation of his Fourth Amendment rights. The court stated, "the Defendant did not have a legitimate expectation of privacy in his jail calls" and noted that the Tenth Circuit in *United States v. Gangi*, 57 F.App'x 809, 814 (10th Cir. 2003) found jail inmates have no reasonable expectation of privacy in jail telephone calls. *Id.* at *7. However, the court then discussed the fact that the defendant had had notice that his calls were being recorded and stated, "[a]ccordingly, the Court finds that the Defendant had no legitimate expectation of privacy in his telephone conversation…." *Id.* at *8. This discussion suggests the *Houston* court found notice an important factor in determining the defendant had no reasonable expectation of privacy in his calls placed from the jail. *See also United States v. Doyle*, 2007 WL 707023 *1 (E.D. Wis. Feb. 16, 2007) (holding that the rights of pretrial detainees may be curtailed to the same extent as convicted prisoners and where a jail provides notice that calls will be monitored, there is no reasonable expectation of privacy in such communications); *United States v. Graham,* 2013 WL 5603946 *2 (D. Mass. 2013) ("Defendant consented to the recording of his phone calls by officials at [the prison] and therefore cannot claim that any reasonable expectation of privacy was violated through dissemination of the recordings.") The undersigned notes, however, that in each of these decisions, the court was not directly faced with a situation where no notice had been given that jail phone calls might be recorded, and, thus the issue of whether a reasonable

13

right of privacy for purposes of the Fourth Amendment hinged on notice was not squarely placed before these courts.[4]

Amazingly, there is no binding precedent squarely on point on this Fourth Amendment issue, and, after all the foregoing analysis with cases supporting both positions, this discussion comes full circle to the original question: does a pretrial detainee have a right of privacy that society is willing to recognize as reasonable in his phone calls made from the booking/intake areas of the jail where there is no notice that such calls may be recorded? It is unnecessary to answer this constitutional question, however, because the phone calls at issue in this motion must be excluded pursuant to Title III. [5] *See Adams v. City of Battles Creek*, 250 F.3d 980, 986 (6th Cir. 2001) ("courts should avoid unnecessary adjudication of constitutional issues," and ["w]here a statutory or nonconstitutional basis exists for reaching a decision…, it is not necessary to reach the constitutional issue.")

---

[4] Defendant also relies on *United States v. Hadley*, 431 F.3d 484 (6th Cir. 2006). *Hadley* was a case on appeal from a trial before Judge Collier in the United States District Court in the Eastern District of Tennessee. At trial the government had sought to introduce recordings of telephone calls made by the defendant: two made, without warning that they might be recorded, in the booking area of the jail shortly after defendant's arrest and other calls made by defendant, with a warning that they might be recorded, from the housing area of the jail. At trial, defendant objected to admission of the unwarned recordings of the calls made from the booking area on the basis of hearsay and alleged violations of the Fourth and Sixth Amendments. *Id.* at 489 and 510. The District Court excluded recordings of these unwarned calls from the booking area but did not state the reason for the exclusion. *Id.* at 489. The District Court did not exclude recordings of the warned calls made from the housing area. The Sixth Circuit did not address the basis for exclusion of the booking area calls but mentioned them because there had been a mix-up between these calls and the calls from the housing area in some of the argument presented on appeal. The Sixth Circuit clarified that the calls from the booking area were not at issue on appeal. *Id.* at 510. I conclude this case is not helpful to the issue at hand since we do not know the reason why the District Court excluded testimony concerning the unwarned calls made in the booking area.

[5] Absent binding precedent directly on point, the Court would necessarily need to compare and weigh against each other the competing interests of the jail to record pretrial detainees' phone calls in the intake/bookings areas and the defendants' interest in private phone calls. *Hudson v. Palmer*, 468 U.S. 517, 527 (1984).

14

*B. Title III*

Suppression is the appropriate remedy for a violation of Title III. *United States v. Ojeda Rios*, 495 U.S. 257, 260 n. 1(1990) (citing 18 U.S.C. § 2518(10)). Whether there was violation of Title III in this instance hinges on the issue of notice. There are two published decisions in the Sixth Circuit directly on point: *United States v. Paul,* 614 F.2d 115, 116 (6th Cir. 1980) and *Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001). As previously discussed, in *Paul*, the defendant was an inmate in a federal prison facility who sought to suppress, pursuant to Title III, recordings of his phones calls made from the prison facility. The *Paul* Court unequivocally held that Title III applies generally to judicially unauthorized wiretapping at a prison facility, even if such wiretapping is permissible under the Fourth Amendment. *Id.* at 116-117. However, in the instant case, the *Paul* Court found that an exception in Title III, known as the law enforcement exception under 18 U.S.C. § 2510(5)(a), applied rendering the recording permissible under Title III. *Id.* at 117. The law enforcement exception "excludes from the ambit of Title III the interception of communications over equipment used by 'an investigative or law enforcement officer in the ordinary course of his duties . . .'" *Id*. at 117 (citing 1968 U.S. Code Congressional and Administrative News, pp. 2112, 2178-79.) The *Paul* Court found that the law enforcement exception, also referred to as "the ordinary course" exception, applied for the following reasons:

> … The monitored calls in this case came in over the prison switchboard and were then routed to telephones provided for inmate use within the institution. The district court found that the telephone monitoring took place pursuant to a policy statement issued by the Federal Bureau of Prisons as well as local prison rules. Although the issue was disputed, the court found that the telephone rules were posted and that the inmates had reasonable notice that monitoring of telephone conversations might occur.

15

> Under these circumstances, we conclude, as did the district court, that the monitoring took place within the ordinary course of the Correctional Officers' duties and was thus permissible under 18 U.S.C. § 2510(5)(a).

*Id.* at 117. Thus, the *Paul* Court required that in order for the law enforcement exception to apply, law enforcement must have undertaken the monitoring pursuant to a specific prison policy and that "the inmates had reasonable notice that monitoring of telephone calls might occur." *Id.*

In *Adams v. City of Battle Creek*, 250 F.3d 980 (6th Cir. 2001), the Sixth Circuit confirmed that notice was an essential part of the law enforcement exception. The issue before the Sixth Circuit was "whether the police department may tap a police officer's pager without a warrant or notice to the officer." *Id.* at 982. In *Adams,* the police department erroneously believed an officer was assisting a drug dealer and "cloned" the officer's pager to track his calls. The Sixth Circuit expressly confirmed that notice of monitoring must occur before the law enforcement exception to Title III can apply. *Id.* at 984-85. The Court held there were two components of the law enforcement exception. First, the interception of the communication must have been undertaken in the ordinary course of duty using equipment provided by a communications carrier as part of the communications network. *Id.* at 983. This first component is not at issue in the present case. The second component, broken into three parts, is discussed by the Sixth Circuit as follows:

> The second part of the exception requires that the clone pager be used in "*the ordinary course*" *of the police department's business.* "Ordinary course of business" is not defined in the statute, but it generally requires that the use be (1) for a legitimate business purpose, (2) routine and (3) *with notice*. There is some disagreement in the case law about whether "covert" monitoring can ever be in the "ordinary course of business." Although we do not find that the statute requires actual consent for the exception to apply, *we do hold that monitoring in the ordinary course of business requires notice to the person or persons being*

16

> *monitored. Because it is undisputed here that plaintiff was not given any notice that his pager was being monitored, the exceptions cannot apply.*[6]
>
> * * *
>
> > … Congress most likely carved out an exception for law enforcement officials to make clear that the routine and almost universal recording of phone lines by police departments and prisons, as well as other law enforcement institutions, is exempt from the statute. *See First v. Stark Cnty. Bd. of Comm'rs*, No. 99–3547, 2000 WL 1478389 (6th Cir. Oct.4, 2000). Such a system routinely and indiscriminately records all phone activity in and out of the police department. This practice is well known in the industry and in the general public, and *the courts have ruled that even prisoners are entitled to some form of notice that such conversations may be monitored or recorded. United States v. Paul*, 614 F.2d 115 (6th Cir.1980); *United States v. Van Poyck,* 77 F.3d 285 (9th Cir.1996) (detention center); *United States v. Daniels*, 902 F.2d 1238, 1245 (7th Cir.1990); *United States v. Amen*, 831 F.2d 373, 378 (2d Cir.1987); *Campiti v. Walonis*, 611 F.2d 387 (1st Cir.1979) (monitoring of specific inmate call, without regulation or notice, and not routinely done, violates statute).

*Id.* at 984 (emphasis added).

Without discussing the Sixth Circuit's decision in *Adams*, the government argues the issue of notice applies only to the consent exception of Title III, not the law enforcement exception. The consent exception to Title III is separate exception from the law enforcement exception. Under the consent exception, it is not a violation of Title III to record a phone call without prior court authorization if a party to the call consents to its recording. *See* 18 U.S.C. § 2511(2)(c). Some courts have held that where a prisoner chooses to use a jail phone after being given notice that his phone call may be monitored, then the prisoner has impliedly consented to the monitoring and there is no violation of Title III. *See e.g.*, *Van Poyck*, 77 F.3d at 292 (holding prisoner had consented to recording of his phone calls where defendant signed consent form

---

[6] The *Adams* Court was also analyzing the application of the "business use" exception to the interception at hand. However, the *Adams* Court applied the language cited above to both the business use exception and the law enforcement exception, as indicated by its use of the plural form of "exception" and its reference to "'the ordinary course' of the police department's business." *See also id.* at 894 ("We do not find any need under the facts presented here to analyze the 'business use' and 'law enforcement' exceptions separately.")

17

upon first arrival at jail that his calls may be recorded and signs warning of monitoring were posted above the phones); *United States v. Magee*, 2014 WL 5325814 *12 (D. Me. Oct. 20, 2014) (for purposes of Title III, prisoner impliedly consented to phone calls being recorded where inmate handbook, placards above phones, and recorded oral notice before placement of calls warned that phone calls in jail may be monitored); *United States v. Freeman*, 2010 WL 989227 * 7 (S.D. Fla. Mar. 16, 2010) ("[i]mplied consent may be deemed [under Title III] where there is a sign near the telephone advising inmates of monitoring.")

Notwithstanding these non-binding decisions regarding notice and implied consent discussed above, the majority opinion in *Adams* requires notice in order for the law enforcement exception to apply, and the majority opinion of a published decision constitutes the opinion of the court and is binding. *See Bell v. Bell*, 512 F.3d 223, 231 n.2 (6th Cir. 2008) (en banc) ("If the panel majority's opinion remained as binding precedent…."); *Meyers v. Asset Acceptance LLC*, 750 F.Supp.2d 864, 869 (S.D. Ohio 2010) (only the majority opinion is controlling precedent; the dissent is "but the view of one learned judicial officer"); *Parker v. Planters Corp.*, 203 F.Supp.2d 888, 892 n. 4 (W.D. Tenn. 2002) ("[b]ecause that portion of the opinion commanded a majority of votes from the Panel, it is binding precedent in this Circuit.")

If there remains any doubt that the majority opinion in *Adams* requires some form of notice in order for the law enforcement exception to apply, the undersigned observes that Circuit Judge Krupansky, one of the three member panel in *Adams*, dissented from the majority opinion on that very issue. *Id.* at 991-992. Judge Krupansky argued that this holding by the panel majority rendered the consent exception to Title III superfluous. *Id.* at 992. ("if the party has received advanced notice of monitoring, then that party may ordinarily be said to have consented to the subsequent monitoring. Hence, by reading the … law enforcement exception[] to include

18

actual notice, the panel majority has made [that] exception[] superfluous in light of the consent exception.")

On the other hand, at least one court has held it does not necessarily follow that the same degree of notice is required for both the consent and the law enforcement exceptions. *See United States v. Friedman*, 300 F.3d 111, 122 - 123 (2d Cir. 2002) (stating with approval that "the majority [of the *Adams* Court] indicated that notice short of that required to find implied consent would satisfy the 'ordinary course' [of law enforcement duties] exception; if so, the 'ordinary course' exception would *not* be superfluous" [to the consent exception.]) (emphasis original). In any event, the controlling holding in *Adams* is clear: notice of some sort is required for the law enforcement exception to apply. The government concedes the Defendant in this case received no notice in any form that his calls from the intake/booking areas would be recorded. Thus, the law enforcement exception to Title III does not apply, and I conclude the recordings were made in violation of Title III and should be suppressed.[7]

---

[7] In *United States v. Rice*, 478 F.3d 704, 711 (6th Cir. 2007), the Sixth Circuit held that "the good faith exception to the warrant requirement is not applicable to warrants obtained pursuant to Title III."

19

IV. Conclusion

Accordingly, for the reasons stated herein, it is RECOMMENDED that the Defendant's motion to suppress his statement [Doc. 41 and 64] be DENIED as moot, his motion to suppress the contents of his cell phone [Doc. 42 and 65] be DENIED, and his motion to suppress the recordings of his phone calls placed from the intake/booking areas of the Jail [Doc. 46 and 66] be GRANTED.[8]

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[8] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).